# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT CHATTANOOGA

| | | | |
|---|---|---|---|
| JEFFREY S. NICHOLS, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | No.: | 1:20-CV-199-DCLC-CHS |
| | ) | | |
| CENTURION, KATHRYN CAMPBELL, | ) | | |
| PHYLLIS SUTTON, and | ) | | |
| JOHN/JANE DOE, | ) | | |
| | ) | | |
| Defendants. | ) | | |

## MEMORANDUM & ORDER

The Court is in receipt of a pro se prisoner's complaint for violation of 42 U.S.C. § 1983 [Doc. 2], a related motion for leave to proceed *in forma pauperis* [Doc. 1], and a motion for a preliminary injunction [Doc. 3]. The Court will address Plaintiff's motion to proceed *in forma pauperis* prior to screening Plaintiff's complaint pursuant to the Prison Litigation Reform Act ("PLRA") and addressing his motion for a preliminary injunction.

## I.   MOTION TO PROCEED *IN FORMA PAUPERIS*

A review of Plaintiff's certified inmate trust account record demonstrates that Plaintiff lacks sufficient financial resources to pay the filing fee. Accordingly, pursuant to 28 U.S.C. § 1915, Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 1] will be **GRANTED**.

Because Plaintiff is an inmate in the Bledsoe County Correctional Complex, he is **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit to the Clerk, U.S. District Court, 900 Georgia Avenue, Chattanooga, Tennessee 37402, as an initial partial payment, whichever is the greater of: (a) twenty percent (20%) of the average monthly deposits to Plaintiff's inmate trust account; or (b) twenty percent (20%) of the average monthly balance in his inmate trust account for the six-month period

preceding the filing of the complaint. 28 U.S.C. § 1915(b) (1) (A) and (B). Thereafter, the custodian of Plaintiff's inmate trust account is directed to submit twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

To ensure compliance with this fee-collection procedure, the Clerk is **DIRECTED** to mail a copy of this memorandum and order to the custodian of inmate accounts at the institution where Plaintiff is now confined. The Clerk is also **DIRECTED** to furnish a copy of this order to the Attorney General for the State of Tennessee and the Court's financial deputy. This order shall be placed in Plaintiff's prison file and follow him if he is transferred to another correctional institution.

## II.    PLRA SCREENING

### A.    PLAINTIFF'S ALLEGATIONS

Plaintiff was diagnosed with gastroesophageal reflux disease ("GERD")[1] in 1989 and was prescribed Zantac to treat the condition [Doc. 2 p. 3-4]. Plaintiff was placed in the custody of the

---

[1]    According to the Mayo Clinic:

> Gastroesophageal reflux disease (GERD) occurs when stomach acid frequently flows back into the tube connecting your mouth and stomach (esophagus). This backwash (acid reflux) can irritate the lining of your esophagus.

> Many people experience acid reflux from time to time. GERD is mild acid reflux that occurs at least twice a week, or moderate to severe acid reflux that occurs at least once a week.

> Most people can manage the discomfort of GERD with lifestyle changes and over-the-counter medications. But some people with GERD may need stronger medications or surgery to ease symptoms.

2

Tennessee Department of Correction ("TDOC") in 2004, and numerous medical providers confirmed his diagnosis and continued to treat his disease with Zantac or a generic version thereof [*Id*. at 4].

In January 2020, while housed at the Bledsoe County Correctional Complex ("BCCX"), Plaintiff was advised that his Zantac had been discontinued and that he would be switched to Prilosec or another medication [*Id*. at 4-5]. On March 18, 2020, Plaintiff was examined by Dr. Rich, one of the physicians employed by Defendant Centurion, TDOC's contract medical provider [*Id*. at 5]. At that time, Dr. Rich confirmed that Plaintiff's prescription for Zantac had been discontinued due to claims that it could cause cancer [*Id*.]. Dr. Rich confirmed that Plaintiff suffered with chronic GERD and noted the positive lifestyle changes Plaintiff had made in order to help ease his symptoms and reduce the amount of medication needed to treat his condition [*Id*.]. Dr. Rich also discussed with Plaintiff the medications available on BCCX's commissary and whether they had been effective at treating Plaintiff's symptoms in the past [*Id*.]. Plaintiff explained to Dr. Rich that he had tried all the medications, and that Prilosec was the only one that seemed moderately effective [*Id*.]. Dr. Rich advised Plaintiff that she would prescribe him Pepcid, warning Plaintiff that she did not know if Centurion would approve the medication when heartburn medication is available on BCCX's commissary [*Id*.].

Plaintiff received 30 Pepcid tablets on April 8, 2020 [*Id*. at 6]. According to Plaintiff, Pepcid is more effective at controlling his acid reflux than any other medication he has ever tried [*Id*.]. When Plaintiff tried to have the prescription renewed in May 2020, however, Defendant Phyllis Sutton, Centurion's manager/supervisor over the medical clinic, advised Plaintiff that the

---

*See* https://www.mayoclinic.org/diseases-conditions/gerd/symptoms-causes/syc-20361940 (last accessed July 16, 2020).

30-day supply had only been prescribed to provide him time to order Pepcid from commissary, and that the clinic was only taking emergency patients due to the COVID pandemic [*Id.*]. Plaintiff maintains that Pepcid is not available on commissary [*Id.*].

On May 15, 2020, Plaintiff was called to the health clinic for his physical, and while there, he discussed his Pepcid order with the nurse practitioner, Ms. Gann [*Id.*]. Ms. Gann stated that Plaintiff's file indicated that his Pepcid had been discontinued, that it would not be renewed, and that he would need to purchase a heartburn medication available on BCCX's commissary [*Id.*]. Ms. Gann stated that "someone named Campbell" had made the decision to discontinue Plaintiff's Pepcid prescription, noting that the file indicated "that Plaintiff had not shown that he had tried to treat his condition with lifestyle changes or that he had tried the medications available on commissary" [*Id.*]. When Plaintiff advised Ms. Gann that none of those medications adequately controlled his acid reflux, Ms. Gann stated she would sign Plaintiff for a chronic care follow-up so that he could discuss the matter with his medical provider [*Id.*].

On May 18, 2020, Plaintiff filed a grievance against Defendant Kathryn Campbell, Health Services Administrator, stating that she failed to provide him necessary medications and arguing that she lacked the medical qualifications to discontinue his medication [*Id.*]. Ms. Campbell responded that she had not written or discontinued Plaintiff's medication, and that the "order ran out and was not renewed based on the provider's discretion" [*Id.* at 7]. The following day, Plaintiff sent an inmate inquiry to Defendant Sutton asking for Pepcid, or an equivalent medication, to be ordered for his condition [*Id.*]. Plaintiff advised her that the only medication available on commissary that would treat his condition is Prilosec, which he is unable to afford [*Id.*]. Defendant Sutton responded on May 22, 2020, advising Plaintiff of the medications available on commissary and noting that he would need to see a provider to have his Pepcid prescription renewed [*Id.*].

Defendant Sutton further advised Plaintiff, "You are not indigent so the Pepcid will not be re-ordered for long-term use unless you have a proven diagnosis that supports its use" [*Id.*].

Over the next month or so, Plaintiff sent complaints to Centurion and TDOC officials, along with inmate inquiries and grievances requesting information about the reasons his medication was discontinued [*Id.* at 8]. He also requested the name of the medical provider who refused to renew his Pepcid prescription [*Id.*]. Plaintiff asserts that "everyone seemed to claim" they had not been the individual responsible [*Id.*].

Plaintiff asserts that he cannot afford to purchase Prilosec — the only medication off commissary that could control his condition [*Id.* at 8]. Plaintiff maintains that he only makes approximately $60 per month in his prison job, and that a 31-day supply of Prilosec would cost approximately $90 per month [*Id.*]. Further, he maintains, even if he had the funds to purchase the medication, he would need 7 boxes per month, and the commissary's limit of 1 box per week would not even allow Plaintiff to receive the minimum recommended dosage [*Id.*]. Therefore, he maintains, Defendants have effectively refused him medication necessary to treat a serious medical condition in order to maximize Centurion's profits [*See, e.g., id.* at 10].

## B.  SCREENING STANDARD

Under the PLRA, district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71

5

(6th Cir. 2010). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Courts liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, allegations that give rise to a mere possibility that a plaintiff might later establish undisclosed facts supporting recovery are not well-pled and do not state a plausible claim. *Twombly*, 550 U.S. at 555, 570. Further, formulaic and conclusory recitations of the elements of a claim which are not supported by specific facts are insufficient to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must establish that he was deprived of a federal right by a person acting under color of state law. *Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) (stating that "Section 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere").

## C.   ANALYSIS

Plaintiff has sued each individual Defendant in both his or her official and individual capacity. Therefore, the Court first addresses any potential liability of the individual Defendants before addressing the liability of any Defendant in his or her capacity as a Centurion employee. In considering the liability of Defendants, the Court notes that it is well settled that the Constitution does not guarantee a prisoner "unqualified access to healthcare." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). However, the denial of constitutionally adequate medical care violates the Eighth Amendment's prohibition against cruel and unusual punishment, which proscribes acts or omissions that produce an "unnecessary and wanton infliction of pain." *Wilson v. Seiter*, 501 U.S.

6

294, 297 (1991). An Eighth Amendment claim for the denial of adequate medical treatment is composed of two parts: (1) an objective component, which requires a plaintiff to show a "sufficiently serious" medical need; and (2) a subjective component, which requires the plaintiff to show the defendants acted with "deliberate indifference" to that need. *Farmer v. Brennan*, 511 U.S. 825, 834, 842 (1994). Negligence is insufficient to establish liability; deliberate indifference requires a mental state amounting to criminal recklessness. *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013) (citing *Farmer*, 511 U.S. at 834, 839-40). Therefore, to establish an official's liability, a prisoner must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Where medical treatment has been provided, a prisoner's disagreement with the adequacy of care given does not implicate the Constitution. *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1996). This is because "federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" *Id.* (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). Rather, to state a constitutional claim, such a prisoner must show that his treatment was "so woefully inadequate as to amount to no treatment at all." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2001).

## 1.     Individual Defendants

Plaintiff's complaint acknowledges that an unknown medical provider refuses to continue his prescription GERD medication, and he acknowledges that neither Kathryn Campbell nor Phyllis Sutton are prescribing physicians. Therefore, while each of these named Defendants have some relationship to Plaintiff's health care, neither are responsible for the discontinuance and/or denial of prescription medication. Accordingly, Plaintiff has failed to state a claim against Kathryn

Campbell or Phyllis Sutton in their individual capacities. *See, e.g, Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted); *see also Twombly*, 550 U.S. at 555, 570 (finding allegations that give rise to a mere possibility that a plaintiff might later establish undisclosed facts supporting recovery do not state a plausible claim for relief).

Given the facts asserted by Plaintiff, he may, however, be able to state a claim against the individual(s) responsible for refusing to continue his prescription medication. Therefore, the Court will not dismiss John/Jane Doe at this time, though the Court notes that process cannot issue against an unnamed individual. Rather, Plaintiff should move to substitute the individual(s) responsible once he is able to conduct discovery in this matter.

2. **Official-Capacity Defendants**

Plaintiff's suit against the individual Defendants in their official capacities is the equivalent of suit against Centurion. *See Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1993) (noting an official-capacity claim "seeks damages not from the individual officer, but from the entity from which the officer is an agent"). Therefore, as long as Centurion is a Defendant, the claims against its employees in their official capacities is redundant and subject to dismissal. *See, e.g., McNutt v. Centurion Med.*, No. 2:17-CV-212, 2018 WL 735227, at *3 (E.D. Tenn. Feb. 5, 2018).

Centurion cannot be subject to § 1983 liability merely because it has employed someone who violated Plaintiff's constitutional rights; that is, it "cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). Rather, to demonstrate that Centurion bears any liability, Plaintiff must identify a

8

policy or custom of the entity and show that his particular injury was incurred due to the execution of that policy. *See Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (citation and quotation marks omitted); *see also Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011) (holding plaintiff must allege "a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his rights).

Here, Plaintiff maintains that he has a chronic, serious medical condition that Defendant Centurion is refusing to treat, despite his inability to afford an adequate dosage of a comparable, though less effective, medication. He has alleged that Centurion maintains this practice in order to cut costs and increase profits. Therefore, accepting Plaintiff's allegations as true, the Court finds Plaintiff has stated a plausible claim against Centurion for the denial of medical care, and the Court will allow the case to **PROCEED** as to this Defendant.

## III.    MOTION FOR INJUNCTIVE RELIEF

Finally, the Court addresses Plaintiff's motion for a preliminary injunction [Doc. 3]. Plaintiff requests that Defendants be enjoined from denying him the medication Pepcid [*Id.*]. However, a preliminary injunction may not issue unless the Court provides notice to all parties and gives them a chance to be heard. *See* Fed. R. Civ. P. 65(a)(1). Inasmuch as Plaintiff filed the instant motion before the Court any Defendant has been served, the Court treats it as a motion for a temporary restraining order. *See* Fed. R. Civ. P. 65(b).

Both temporary restraining orders ("TRO") and preliminary injunctions are governed by Federal Rule of Civil Procedure 65. While a preliminary injunction requires notice to the adverse party, the purpose of a TRO is to preserve the status quo until an adversarial hearing may be held for a preliminary injunction. Fed. R. Civ. P. 65(b)(3); *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 438-39 (1974). The

9

factors to be considered in determining whether a TRO or preliminary injunction should issue, however, are the same.  *See, e.g., Workman v. Bredesen*, 486 F.3d 896, 904-05 (6th Cir. 2007).

In determining whether to grant a request for preliminary relief, courts balance the following factors: (1) whether plaintiff "has shown a strong likelihood of success on the merits;" (2) whether plaintiff will suffer irreparable injury in the absence of an injunction; (3) whether the injunction will cause substantial harm to others; and (4) whether the injunction would serve the public interest.  *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citations omitted).  Injunctive relief is "an extraordinary remedy never awarded as of right." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  Rather, it "should be granted only if the movant carries his or her burden of proving that the circumstances clearly warrant it." *Overstreet*, 305 F.3d at 573.

The record at this point does not contain Plaintiff's relevant medical records, sick call requests, or any other supporting documentation for his claims that would suggest that Plaintiff has a strong likelihood of success on the merits in this case.  Instead, at this juncture, Plaintiff's allegations may or may not state a cognizable claim under § 1983.  *See, e.g., Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017) (citing *Estelle v. Gamble*, 429 U.S. 97, 107 (1976)) (providing that "[a]s a general rule, a patient's disagreement with his physicians over the proper course of treatment alleges, at most, a medical-malpractice claim, which is not cognizable under § 1983," and that "'[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law'").  Therefore, the Court finds that Plaintiff has not demonstrated a strong likelihood of success on the merits in this case.

As to the second factor, Plaintiff states that the medication he can purchase through commissary are either inadequate or are for short-term treatment of GERD [*See* Doc. 4 p. 2]. However, medications are nonetheless available to Plaintiff in the interim, and therefore, the Court finds that Plaintiff will not suffer irreparable injury if he is forced to take these medications until this matter can be heard on the merits.

As to the third and fourth factors, the Court notes that while there is a public interest is served by upholding the civil rights of all individuals, there is also strong public interest in leaving the administrative matters of state prisons in the hands of jail officials. *McCord v. Maggio*, 910 F.2d 1248, 1250 (1990) (holding prisoner housing is a matter squarely within the "broad discretion" of prison officials, "free from judicial intervention" except in extreme circumstances). In fact, courts are reluctant to interfere in the day-to-day operations of a prison system unless presented with substantial evidence of patently unreasonable conduct. *See Bell v. Wolfish*, 441 U.S. 520, 547-48 (1979). As noted above, Plaintiff has access to medications to treat his GERD, albeit not the medications of his preference. The Court declines to determine that forcing Plaintiff to purchase less effective over-the-counter medications via commissary is patently unreasonable conduct. Therefore, the Court finds that the public interest in leaving administrative matters of state prisons in the hands of jail officials weighs against entry of a preliminary injunction in this case. *Rhinehart v. Scutt*, 509 F. App'x 510, 516 (6th Cir. 2013); see also *Glover*, 855 F.2d 277 (6th Cir. 1988) (setting forth various public policy concerns relating to court intrusion into jail administrative matters and holding that a federal court should not "attempt to administer any portion of a state correctional system program except in the most compelling situations"). Accordingly, Plaintiff's motion for injunctive relief [Doc. 3] will be **DENIED**.

## IV. CONCLUSION

For the reasons set forth above:

1.      Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 1] is **GRANTED**;

2.      Plaintiff is **ASSESSED** the civil filing fee of $350.00;

3.      The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit the filing fee to the Clerk in the manner set for above;

4.      The Clerk is **DIRECTED** to mail a copy of this memorandum and order to the custodian of inmate accounts at the institution where Plaintiff is now confined, to the Attorney General for the State of Tennessee, and to the Court's financial deputy;

5.      Plaintiff's claim that Centurion and John/Jane Doe have denied him adequate medical care shall **PROCEED**;

6.      The Clerk is hereby **DIRECTED** to send Plaintiff a service packet (a blank summons and USM 285 form) for Defendant Centurion;

7.      Plaintiff is **ORDERED** to complete the service packet and return it to the Clerk's Office within twenty-one (21) days of entry of this memorandum and order.  At that time, the summons will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service pursuant to Fed. R. Civ. P. 4;

8.      Plaintiff is **NOTIFIED** that failure to return the completed service packet within the time required may result in dismissal of this action for want of prosecution and/or failure to follow Court orders;

9.      Defendant shall answer or otherwise respond to the complaint within twenty-one (21) days from the date of service.  If Defendant fails to timely respond to the complaint, any such failure may result in entry of judgment by default;

10.     Plaintiff's motion for injunctive relief [Doc. 3] is **DENIED**;

11.     Defendants Kathryn Campbell and Phyllis Sutton are **DISMISSED** from this action, as they bear no individual liability and any claim against them in their official capacities is redundant to Plaintiff's claim against Centurion; and

12.     Plaintiff is **ORDERED** to immediately inform the Court and Defendants or their counsel of record of any address changes in writing.  Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his or her address, to monitor the progress of the case, and to prosecute or defend the action diligently.  E.D. Tenn. L.R. 83.13. Failure to provide a correct address to this Court within (14) fourteen days of any change in address may result in the dismissal of this action.

**SO ORDERED**.

**ENTER:**

s/Clifton L. Corker
United States District Judge