# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT CHATTANOOGA

JEFFREY S. NICHOLS,      )
     )
     Plaintiff,      )
     )
v.      )      No.:      1:20-CV-199-DCLC-CHS
     )
CENTURION, et al.,      )
     )
     Defendants.      )

## <u>MEMORANDUM OPINION</u>

Defendants Orville Campbell, M.D., Centurion of Tennessee, LLC ("Centurion"), and Tony Parker have filed separate motions for summary judgment in this pro se prisoner's civil rights action asserting a violation of 42 U.S.C. §1983 [Docs. 64, 67, and 82]. Plaintiff has filed responses in opposition to the motions [Docs. 76, 78, and 89], and Defendants have filed replies thereto [Doc. 85, 86, 93, and 97]. Plaintiff has filed a sur-reply to Centurion's reply [Doc. 87], and Centurion has moved to strike Plaintiff's reply [Doc. 88]. Upon consideration of the parties' pleadings, the summary judgment evidence, and the applicable law, the Court finds that summary judgment should be **GRANTED** in favor of Defendants, Defendant Centurion's motion to strike **DENIED** as moot, and this action fully and finally **DISMISSED**.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only when the pleadings and evidence, viewed in a light most favorable to the nonmoving party, illustrate that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a),(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is deemed "material" if resolving that fact in favor of one party "might affect the outcome of the suit under governing law." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).  To establish an entitlement to summary judgment, the moving party must demonstrate that the nonmoving party cannot establish an essential element of his case for which he bears the ultimate burden of proof at trial.  *Celotex*, 477 U.S. at 322; *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993).

Once the motion is properly supported with competent evidence, the nonmovant must show that summary judgment is inappropriate by setting forth specific facts showing there is a genuine issue for trial.  *Celotex*, 477 U.S. at 323; *Anderson*, 477 U.S. at 249.  If the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," then there is a genuine dispute as to a material fact.  *Anderson*, 477 U.S. at 248.  If no proof is presented, however, the Court does not presume that the nonmovant "could or would prove the necessary facts."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n.*, 497 U.S. 871, 889 (1990)).

## II.    SUMMARY JUDGMENT EVIDENCE

Plaintiff is an inmate in the custody of the Tennessee Department of Correction ("TDOC") housed at the Bledsoe County Correctional Complex ("BCCX").  Prior to being incarcerated, he was diagnosed with gastroesophageal reflux disease ("GERD")[1] and treated with medication — primarily Zantac [Doc. 45 ¶ 20].  When Plaintiff was incarcerated in August 2004, he continued to receive a prescription for Zantac, or its generic counterpart, Ranitidine, through the TDOC pharmacy [*Id*. at ¶ 21].

On September 1, 2017, TDOC instituted policy 113.70, which was approved and enacted

---

[1] "Gastroesophageal reflux disease (GERD) occurs when stomach acid frequently flows back into the tube connecting your mouth and stomach (esophagus). This backwash (acid reflux) can irritate the lining of your esophagus."  Mayo Clinic, "*Gastroesophageal reflux disease (GERD)*," https://www.mayoclinic.org/diseases-conditions/gerd/symptoms-causes/syc-20361940 (last visited May 16, 2022).

2

by TDOC Commissioner, Tony Parker [Doc. 82-1; Doc. 82-2 p. 4]. Pursuant to this policy, all medication orders filled through the TDOC pharmacy required a diagnosis supported by evidence of clinical pathology [Doc. 82-1 p. 3-4; Doc. 82-2 p. 13; Doc. 64-6]. That is, inmates with a diagnosed medical condition for which applicable clinical guidelines indicate the use of a given drug can receive the product through the TDOC pharmacy [Doc. 82-2 p. 6]. GERD medications are not included in TDOC's formulary, but an attending physician may prescribe these products for an inmate through the TDOC pharmacy by presenting a request for prior authorization to the utilization management office of the medical services' vendor [Doc. 82-2 p. 13; *see also* Doc. 64-6]. Such a request must be supported by clinical evidence of medical necessity and include a description of every procedure, test, and/or intervention taken up to the date of the request, including a description of the plaintiff's pertinent medical history [Doc. 64-6 ¶3; Doc. 82-2 p. 13]. The policy requiring prior authorization was enacted because, historically, physicians prescribed medications based solely on the inmate's complaints, which placed an unreasonable burden on the operations and budget of the TDOC pharmacy [Doc. 82-2 p. 13]. This policy echoed the contract between Centurion and the TDOC, which contained cost-cutting provisions to establish controls to avoid unnecessary costs and to ensure that prescription medications are clinically justified [*Id.* at 10-11, 21-22].

Certain prescription drugs, such as heartburn medication, that are not prescribed through the TDOC pharmacy may nonetheless be obtained over the counter ("OTC") through the prison commissary [*Id.* at 13]. Where an inmate does not have a current medical condition supported by evidence of clinical pathology for which the applicable clinical guidelines indicate the use of a given drug, then the inmate's OTC use and purchase of a particular product is not part of the inmate's medical plan of care [*Id.* at 5-6]. TDOC Policy 113.70 requires non-indigent inmates to

3

purchase OTC medications through the commissary, where inmates are limited to one OTC medication commissary order per week [Doc. 64-1 p. 4 ¶5; Doc. 82-2 p. 8]. TDOC classifies indigent inmates as those whose regular income is $6.00 or less per month and whose trust fund balance is less than $6.00 [Doc. 82-2 p. 4-5].

Plaintiff made an average of $63.00 per month at his prison job [Doc. 82-2 p. 8]. Plaintiff was never deemed indigent by the TDOC and had funds in his inmate account at all relevant times [Doc. 64-4 p. 1]. Nonetheless, Plaintiff continued to receive Ranitidine through the TDOC pharmacy until March 18, 2020, when Dr. Rich, an attending physician at BCCX, informed Plaintiff that his prescription would be discontinued due to the Center for Disease Control's claim that the medication could cause cancer [Doc. 45 ¶24]. Plaintiff's health records note that Dr. Rich discussed diet modification and weight loss with Plaintiff, and she prescribed him a forty-two (42) day course of Pepcid to treat Plaintiff's non-erosive GERD [Doc. 63-1 p. 37]. Dr. Rich noted that a prior trial of omeprazole (Prilosec) had been ineffective for treating Plaintiff's symptoms, that Tums/Mintox had been ineffective, and that the use of a proton pump inhibitor ("PPI") was not clinically indicated for Plaintiff [*Id.*]. On the same date, a formal "Request to Use Non-Formulary Drug ("NFR")" issued with Dr. Rich's request and findings [*Id.* at 36].

The NFR request was evaluated by Defendant Dr. Orville Campbell, who then served as the Associate Medical Director for Utilization Management and assisted in fulfilling Centurion's contractual obligations for inmate health services with TDOC [Doc. 64-6 ¶2]. On March 21, 2020, Dr. Campbell reviewed the request, and in his notes, Dr. Campbell noted the lack of necessary information in the request and inquired whether a gastrointestinal (GI) workup was performed, whether Plaintiff had been tested for H. pylori, what lifestyle modifications had been tried, and whether there were any other failed measures beyond Tums and Mintox [Doc. 64-6 ¶9; Doc. 63-1

p. 36]. Despite the lack of relevant information, Dr. Campbell approved a thirty (30) day course of Pepcid for Plaintiff [Doc. 63-1 p. 36; Doc. 64-6 ¶¶ 8-10, 12]. Dr. Campbell never received another NFR request for Plaintiff [Doc. 64-6 ¶13; *see also* Doc. 63-1 p. 5, 29].

Plaintiff attempted to get his Pepcid prescription renewed on May 13, 2020, but he was told that the clinic could only see "urgent" patients due to the COVID-19 pandemic [Doc. 45 ¶29]. During Plaintiff's physical at the clinic two days later, Ms. Gann, F.NP, advised Plaintiff that his Pepcid order had not been renewed, and that he would need to purchase one of the heartburn medications from commissary [*Id*. ¶31]. Plaintiff placed a sick call on July 9, 2020, to discuss his GERD medication [Doc. 63-1 p. 7]. A progress note dated July 10, 2020, entered by Lanita Gann, NP-C, indicates that the sick call was deferred due to the availability of GERD medications on commissary and that Plaintiff was called to the clinic and informed of that [*Id*. at 8].

Plaintiff was able to purchase medications from commissary to help control his condition, including Pepcid when it was placed on the commissary in January 2021 [Doc. 64-4 p. 1-2]. However, on a number of occasions Plaintiff notified health care staff that he could not afford to purchase an adequate amount of the medication needed to equal the prescription dose he previously received through the TDOC pharmacy [*Id*. at 1].

After Plaintiff's prescription for GERD medication lapsed in April 2020, Plaintiff received medical care at BCCX for a variety of conditions, including GERD, allergy/cold symptoms, eye care, a hernia, and constipation [*See, generally*, Doc. 63-1 p. 6, 10-17, 27, 32, 34]. On October 19, 2020, Plaintiff saw Dr. Nguyen, who ordered Plaintiff to undergo further testing for GERD, prescribed Plaintiff Mintox tablets for GERD, prescribed Plaintiff Gelusil tablets for reflux, and found "no red flag symptoms that could need" a gastrointestinal workup or consult for Plaintiff [*Id*. at 5, 30].

When Plaintiff was released from TDOC custody and discharged from its medical care in August 2021, Plaintiff was released with orders for medication to treat dry eye and/or allergy symptoms [*Id.* at 24, 25].

## III. ANALYSIS

Plaintiff maintains that Defendants, in both their official and individual capacities, violated his right to constitutionally adequate medical care by failing to prescribe him medication to treat a well-documented medical condition [*See, generally,* Doc. 45]. This allegation implicates the Eighth Amendment's prohibition against cruel and unusual punishment, which proscribes acts or omissions that produce an "unnecessary and wanton infliction of pain." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). An Eighth Amendment claim for the denial of adequate medical treatment is composed of two parts: (1) an objective component, which requires a plaintiff to show a "sufficiently serious" medical need; and (2) a subjective component, which requires the plaintiff to show the defendants acted with "deliberate indifference" to that need. *Farmer v. Brennan*, 511 U.S. 825, 834, 842 (1994).

To satisfy the objective component, a plaintiff must show a sufficiently serious medical need that, if care were denied, would result in unnecessary or wanton infliction of pain or pose a substantial risk of serious harm. *See Quigley v. Thai*, 707 F.3d 675, 681 (6th Cir. 2013); *Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010). Where the need for medical treatment involves a minor or non-obvious condition, plaintiffs are required to "place verifying medical evidence in the record to establish the detrimental effect" of the allegedly inadequate or delayed treatment. *See Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 898 (6th Cir. 2004); *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001).

In order to meet the subjective requirement of the Eighth Amendment test, an inmate must show more than negligence in failing to render adequate medical care. *See, e.g., Harrison v. Ash*,

6

539 F.3d 510, 518 (6th Cir. 2008). Rather, deliberate indifference is demonstrated only where "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference.'" *Id*. (quoting *Farmer*, 511 U.S. at 837). The Sixth Circuit has held that "there is a high bar that a plaintiff must clear to prove an Eighth Amendment medical-needs claim: The doctor must have *consciously* expos[ed] the patient to an *excessive* risk of *serious* harm." *Rhinehart v. Scutt*, 894 F.3d 721, 738-39 (6th Cir. 2018) (citation and internal quotation marks omitted).

### 1. Official Capacity Claims

### a. Centurion and Dr. Campbell

Where a private entity contracts with the state to perform a traditional state function (such as providing medical care at a penal institution), it acts under color of state law and may be sued under 42 U.S.C. § 1983. *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). However, a private entity cannot be subject to § 1983 liability merely because it has employed someone who violated Plaintiff's constitutional rights; that is, it "cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). Rather, to prevail on a § 1983 claim against Centurion or Dr. Campbell in his official capacity as a Centurion employee, Plaintiff "must show that a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his rights. *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011) (citation omitted). Plaintiff must "identify the policy, connect the policy to the [entity] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (citation and quotation marks omitted).

The TDOC policy forming the basis of this action states, in relevant part:

7

All OTC medications listed on the approved OTC list, and available at the site, shall be obtained by the inmate via commissary, unless the inmate is determined to be indigent by the Health Services Administrator, or their designee.

When inmates are determined to be indigent, OTC medications shall be written for 30 days, unless written based on clinical practice guidelines for a diagnosed medical condition.

[Doc. 64-1 p.4 ¶5]. The parties dispute whether Centurion may be held responsible for the way it carries out what is expressly a TDOC policy [*Compare* Doc. 29 *with* Doc. 30]. The Court need not wade into this dispute, however, as the Court finds the policy is constitutional facially and as applied to Plaintiff.

A policy requiring non-indigent inmates to purchase medications is not unconstitutional. *See, e.g., Reynolds v. Wagner*, 128 F.3d 166, 173-75 (3d Cir. 1997) ("If a prisoner is able to pay for medical care, requiring such payment is not 'deliberate indifference to serious medical needs.'"); *Roberson v. Bradshaw*, 198 F.3d 645, 647 (8th Cir. 1999) (requiring inmates to pay for their own medications if they can afford to do so is not a federal constitutional violation); *Lee v. Hatcher*, No. 3:16-CV-02590, 2016 WL 5467948, at *3 (M.D. Tenn. Sept. 29, 2016) ("Advising Plaintiff to purchase over-the-counter medication from the commissary, rather than continually dispensing it to him for free, also does not constitute deliberate indifference in the absence of any showing that Plaintiff lacks the funds to purchase the medication."); *Slattery v. Mohr*, No. 2:11-CV-202, 2012 WL 2931131, at *8 (S.D. Ohio July 17, 2012) (finding inmate forced to purchase over-the-counter medications from commissary pursuant to policy did not establish an Eighth Amendment violation where he failed to demonstrate that he was denied medical care due to his inability to afford medication). Here, Plaintiff has admitted that he has never been determined "indigent" by the TDOC. Without this designation, and in accordance with TDOC policy, Plaintiff

was required to purchase his over-the-counter medications from the commissary. Plaintiff did, in fact, purchase this medication on various occasions.

While Plaintiff argues that he was not able to afford an effective dose of GERD medication from commissary, there is no competent summary judgment evidence before the Court that a medical provider deemed GERD medication clinically indicated for Plaintiff's symptoms. Rather, the record before the Court indicates that Plaintiff's treating physician determined in March 2020 that his current medication should be discontinued, that Plaintiff needed to lose weight and make lifestyle modifications, and that the use of PPIs were not clinically indicated for his condition. A single NFR request was sent to Dr. Campbell, who indicated the need for additional information to support the request but nonetheless approved the request for a thirty-day period.

Additionally, the esophageal discomfort created by acid reflux does not necessarily produce conspicuous evidence of its presence; that is, it is GERD is not an "obvious" medical condition. *See, e.g., Miles v. Ky. Dep't of Corr.*, 5:16-CV-73, 2019 WL 469776, at *4 (W.D. Ky. Feb. 6, 2019) (finding GERD diagnosis "dissimilar from injuries and medical conditions courts in the Sixth Circuit have commonly deemed 'obvious'"). Here Plaintiff has not presented any verified medical evidence that he suffered a detrimental effect due to the decision not to continue a prescribed course of medication for his GERD, and therefore, he has failed to demonstrate an ability to meet the objective prong of the deliberate indifference analysis. *See Blackmore*, 390 F.3d at 899; *Napier*, 238 F.3d at 742. Conversely, Dr. Campbell has sworn that his review of Plaintiff's medical record does not yield any evidence that Plaintiff experienced any injury as a result of purchasing commissary medications rather than having a prescription for those medications [*See* Doc. 64-6 ¶ 21].

Therefore, the Court finds that Plaintiff has not presented competent evidence demonstrating that he had a verified medical need for prescription medication that he was unable to afford due to Defendants' construction or application of the relevant policies, and Defendants Centurion and Dr. Campbell are entitled to summary judgment.

### b. Tony Parker as TDOC Commissioner

Plaintiff has sued Tony Parker in his official capacity as TDOC Commissioner. Suit against him in this capacity is the equivalent of suit against his employer, the State of Tennessee. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"); *Barber v. City of Salem*, 953 F.2d 232, 237 (6th Cir. 1992). In an action against an officer acting in an official capacity, "the plaintiff seeks damages not from the individual officer, but from the entity from which the officer is an agent." *Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1993).

However, a state is not a "person" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989). Moreover, the doctrine of sovereign immunity prohibits suit a state or its agencies in federal court for damages, unless Congress has abrogated its immunity or the state has expressly waived it. *See WCI, Inc. v. Ohio Dep't of Public Safety*, 18 F.4th 509, 513-14 (6th Cir. Nov. 17, 2021). The State of Tennessee has not waived its immunity to suit under § 1983 or state tort law. *Berndt v. State of Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986) (noting that Tennessee has not waived immunity to suits under § 1983); *Burton v. Durnin*, No. 3:11-CV-429, 2012 WL 946747, at *8 (E.D. Tenn. Mar. 20, 2012) (finding that the "[S]tate of Tennessee has not consented to being sued in federal court for tort claims brought under state law"). Therefore, Plaintiff cannot sustain suit against Defendant Parker in his official capacity, and he is entitled to summary judgment.

10

## 2.    Individual Capacity Claims

Plaintiff has also asserted Eighth Amendment claims against Dr. Campbell and Tony Parker in their individual capacities [*See* Doc. 45 p. 3].  However, as noted above, the competent summary judgment evidence demonstrates that one NFR request was sent to Dr. Campbell, and that he approved that request even though the request did not contain sufficient information to deem the medication clinically indicated.  There is no evidence that Dr. Campbell was responsible for providing Plaintiff with medical care.  There is evidence, however, that Plaintiff had access to alternative medications that he purchased, and that he otherwise received medical treatment while incarcerated.  The Court finds that there is no verified medical evidence in the record that Plaintiff had a serious medical need to which Dr. Campbell was deliberately indifferent, and he is entitled to summary judgment.

Defendant Parker likewise bears no liability in this action.  The TDOC policy at issue is not unconstitutional, as Plaintiff has no right to free medical treatment, there was not a finding of clinical necessity for the prescription medication sought by Plaintiff, and nothing in the policy prevented Plaintiff from purchasing medication, which he did.  Additionally, there is no evidence that Defendant Parker had any participation in the decision to deny or approve the requested medication, and therefore, there is no suggestion that he perceived any risk to Plaintiff should the medicine not be provided.  Accordingly, Defendant Parker is entitled to summary judgment.  *See, e.g., Gibson v. Matthews*, 926 F.2d 532, 535 (6th Cir.1991) (noting that personal liability "must be based on the actions of that defendant in the situation that the defendant faced, and not based on any problems caused by the errors of others, either defendants or nondefendants").

## IV.    CONCLUSION

For the reasons set forth above, Defendants' motions for summary judgment [Docs. 64, 67,

and 82] will be **GRANTED**, Defendant Centurion's motion to strike [Doc. 88] will be **DENIED** as moot, and this action be fully and finally **DISMISSED**.

The Court hereby **CERTIFIES** that any appeal from this order would not be taken in good faith. Therefore, should Plaintiff file a notice of appeal, this Court will **DENY** Plaintiff leave to appeal *in forma pauperis*. *See* 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

**SO ORDERED:**

s/Clifton L. Corker
United States District Judge
